OPINION OF THE COURT
Rachel A. Adams, J.
The issue before this court is whether the biological mother of a child has standing to seek an order of custody of her child after her parental rights have been terminated and after the child has been adopted by his kinship foster mother.
The petitioner, T.C., is the natural mother of J.C., born on March 5, 1987. J.C. resided with his mother, who was 14 at the time, and his great grandmother until he was approximately two years old. T.C. had serious substance abuse problems. According to court records the child was placed with *418 the Commissioner of Social Services and immediately placed with the respondent, R.C., who became the child’s kinship foster mother. It is not seriously disputed that the child continued to reside with R.C.; however, he spent weekends with his great grandmother and frequently saw his natural mother. However, by order dated July 21, 1999, on T.C.’s default, her parental rights were terminated. R.C. filed for adoption and the adoption was finalized on December 21, 2000. R.C. became J.C.’s mother.
On May 17, 2002 T.C. filed a petition seeking an order of custody. The court notes that the petition includes an allegation that T.C.’s rights were terminated without “her knowledge or consent.” Petitioner was directed to serve both the Administration for Children’s Services (hereinafter A.C.S.) and the Legal Aid Society. As Legal Aid did not participate in these proceedings the court assigned the Children’s Law Center, by Natalie Nowiski, Esq., to represent the child. Articulated on the record is R.C.’s willingness to consent to this proceeding. After receipt of the court ordered investigation, which detailed T.C.’s involvement with A.C.S. and described the parties’ current residential circumstances, the court directed that the parties submit memoranda of law on the issue of petitioner’s standing. Both the child’s Law Guardian and A.C.S. submitted affirmations with A.C.S. seeking to be dismissed as a party to the proceeding.
T.C. alleges that the child is poorly treated in the adoptive home and was thrown out by R.C. and has since resided with V.C., his great grandmother. She further alleges that the child has been injured at the hands of his 19-year-old adoptive brother, forced to babysit other siblings in the home and has failed to receive proper medical care for various medical conditions.
The Law Guardian has informed the court that J.C. wants to reside with his natural mother and he supports her petition. The Law Guardian, who also supports the petition, on behalf of her client, cites numerous instances of T.C.’s involvement with the child in attending to both his medical and academic needs. Attached as exhibits to the Law Guardian’s memorandum are certificates indicating that T.C. successfully completed both residential and outpatient drug programs in 1999. Additionally, the Law Guardian reports that T.C. claims she is now clean and sober.
After consideration of the issues raised in this petition and having reviewed the memoranda of law submitted by the Law *419 Guardian and A.C.S., the court concludes that the petitioner natural mother does not have standing to seek custody of a child for whom her parental rights were terminated.
The mother’s right to seek an order of custody ended when the court issued an order terminating her rights as to this child. The order issued by the court on July 21, 1999 is res judicata and acts as a permanent preclusion to this petitioner from seeking a court sanctioned legal relationship with J.C. (Matter of Tiffany A. v Margaret H., 171 Misc 2d 786 [Fam Ct, Kings County 1996]; Santosky v Roach, 161 AD2d 908 [3d Dept 1990].)
The Law Guardian urges the court to consider the petition in light of Bennett v Jeffreys (40 NY2d 543 [1976]), arguing that the petitioner is entitled to a best interests hearing based on the allegations that R.C. has failed to properly care for the child and has permitted the child to have a relationship with his natural mother. The Law Guardian argues that denying the natural mother the right to a hearing to consider “extraordinary circumstances” would deprive her of what the Court of Appeals has granted to other third-party legal strangers under Bennett. However, this court cannot find that Bennett should include those parents whose rights have already been determined as to the subject child who is again before the court. Accordingly, it is not necessary to reach the issue of “extraordinary circumstances.” If the court granted the natural mother standing to pursue her custody application then the court would, in essence, permit her to circumvent the order which terminated her parental rights. Further, it would undermine the purpose of New York’s statutory framework as outlined in the Social Services Law, the legislative intent for which is designed to provide permanency for the child who is not able to return to his natural parent. In the instant matter permanency was provided by J.C.’s adoption by his foster mother, R.C. (See generally Social Services Law § 384-b [1] [a] [i].)
The court declines to address whether under the particular facts of this case an application by the petitioner to vacate her default would be successful; however, absent same, T.C. is precluded from seeking the relief requested in her petition. (Matter of Adam S., 287 AD2d 723 [2d Dept 2001].) Accordingly, the petition is dismissed in its entirety.